TuRley, J.
delivered tbe opinion of tbe court.
This is an action of trespass quare clausum fregit, brought by the plaintiff below, JohnP. Simmons, against the defendants, Richard Chouning and John C. Payne. Upon the trial, the matters in controversy between the parties turned upon the question of boundary. It appears very satisfactorily, that the lines of the tract of land owned by the plaintiff, if run according to its calls and original survey, includes the locus in quo the trespass is charged to have, been committed by the defendants.
But it was contended, that the plaintiff, in 1828, caused his land to be processioned, under the 21st section of the act of 1806, chap. 1, by which processioning the lines were so run as to include the land in dispute, and that he so recognized and adopted the processioning survey as to estop him from claiming .up to the original lines of his entry, survey, and grant. Upon this point, the proof introduced by tbe defendant is, that one Thomas Shaw, deputy surveyor of-Rob.ertson county, did, on the 12th of April, 1828, procession the tract of land owned by the complainant, so as to exclude the portion now claimed by the defendants; but which really belonged to the plaintiff, if *300 the true line had been run in conformity with the entry and survey. This processioning survey purports upon its face to have been made for John P. Simmons, and was registered in Robertson county on the 15th day of May, 1828. There is some proof, showing that Simmons was present when this survey was made, and one or two others, interested in the question by reason of owning adjoining lands. There is also some evidence of loose and unsatisfactory admissions on the part of the plaintiff, as to his acquiescence in the survey, and that his fence was moved so as to accord therewith. But there is no proof showing a positive recognition and adoption of the survey, as thus made with the knowledge that it had deprived him of a portion of the land which had been granted to him by the State of North Carolina. Neither is there any proof that the survey was made with the formalities required by the statute under which it purports to be made; nor that the defendants, or either of them, nor any person under whom they claim, was present, countenancing and superintending.
Upon this point, the Judge charged the jury, “that the survey made by Shaw, designated in argument as the procession survey, was not as such conclusive on the plaintiff; .but the jury should look to the survey, and to the acts of the parties in reference to the same, as part of the evidence in the cause, from all of which they would determine whether a binding agreement had been entered into by the parties, fixing the line run by Shaw as the boundary of their adjoining tracts; and that if the parties, being ignorant of the real boundaries, or doubtful of its exact locality, had entered into an agreement, locating the boundary, they could not depart from such agreement, although the original line might afterwards be found and identified.” The jury found a verdict for the plaintiff. Defendants moved for a new trial; which being overruled, they prosecute their appeal to this court.
It is now contended, that the survey made by Shaw, and the recognition and adoption of it, is proved to have been made by the plaintiff, are conclusive upon him, and estop him from claiming to his true boundary, and, that the Judge erred in not so charging the jury.
*301 The question upon which the Circuit Judge charged the jury is essentially different from the one now presented for our consideration.
We think there is no proof whatever; tending to show that there was ever any agreement of any kind between the plaintiff and defendants, compromising and settling this dispute in relation to their boundaries, and that it would be wholly useless to enquire as to their knowledge or ignorance of the true position of their dividing lines. The only subject, then, for investigation is as to the validity and obligatory force of the processioning survey.
The act of 1806, under which this survey purports to have been made, provides “that it shall and may be lawful for any person or persons who may be desirous of establishing the bounds of any lands, he, she or they may claim by grant from North Carolina or Tennessee, to-cause the same to be processioned in the following manner, viz: Such person or persons shall cause notice to be given at several of the most 'public places within the county wherein said lines are to be processioned, at least twenty days before the same is to be performed, of the time appointed for the processioning, and the corner at which he intends to begin; and he shall also notify the holders or their agents, in writing, of such intention as aforesaid, if such holders or their agents reside within said county: and it shall be the duty of any surveyor appointed by the authority of this act, upon application to him made, to run, mark and describe such trsct of land agreeably to former lines, or natural boundaries, described in such grant, or deed founded upon a grant; or if such lines have not been marked, to mark new lines agreeably to the calls of said grant or deed, and to make a correct plat and certificate of the same, as is required in other cases, and to return the same to the register of the county, to be recorded, at the expense of the applicant: and in any case where the lines are contested by adverse claimants, the sheriff of the county shall, upon the application of either of the parties, forthwith summon a jury to try the matter in dispute.”
Now it cannot, we apprehend, be controverted, that if this processioning survey be obligatory upon the plaintiff, and *302 estops him from claiming according to the truth of his right, it must have been equally obligatory upon the defendants, and have created a mutual estoppel on their parts, if it had been so made as to take a part of their land and give it to the plaintiff; / for estoppels must be mutual; and there would be no equity or justice in holding a man bound by a processioning survey where it operated against him, and another interested in the question not bound by it, when it operated in his favor. Then, the question arises, would the defendant- have been bound by this processioning survey, and estopped from denying it, had it been to the interest of the plaintiff to maintain it, and thus to controvert it? Surely, we think not. Our constitution provides that no man shall be disseized of his freehold, except by the judgment of his peers, or the law of the land. Granting that the act of 1S06 is a law of the land, under which conflicting boundaries may be settled between adjacent freeholders, and that one or the other may, under its provisions, be deprived of his lands; it surely cannot be controverted, that the proceedings under it must be construed with great strictness, as it is very summary in its operations, and may, from the ignorance, prejudice, and passions of a surveyor, sheriff and a jury, who have met together in the woods to settle a question, often of great complexity and difficulty, be productive of much mischief. We do not think, then, that it is requiring too much to say, that the forms of the statute shall be performed substantially, before such resurvey shall be obligatory and binding between the parties interested, and that when such re-survey is attempted to be set up as a bar to the right, it shall be shown that it was made in conformity with the requisitions specified in the act, either by the proof of their performance or by presumption arising from long acquiescence in the lines thus run and remarked.
There is no such proof in thisuase. It does not appear that notice was given twenty days before the processioning, at any public place in the county', or that the holders of adjoining lands or their agents had notice in writing of such intention, both of which are required by the statute; neither is there such an acquiescence by the parties, as will raise a presumption that the notice was given.
*303 To hold the contrary doctrine, would be to deprive a man of his land, by a proceeding in its nature judicial, without notice, when the right to the notice is not onty inherently his, but given to him expressly by the statute. But, furthermore, the statute provides “that the surveyor shall run, mark and describe the land agreeably to the former lines or natural boundaries; and if such lines have not been marked,' to mark new lines, agreeably to the calls-of said grant.” This the surveyor in this case did not do; and the necessary consequence is, that the survey is not obligatory by force of the statute, and could only become so by the adoption and recognition of it by the parties interested under it; and this recognition and adoption must have been on the part of the defendants as well as the plaintiff, or otherwise they would be permitted to blow hot or cold, as it might best suit their convenience.
In the cases of Whitesides vs. Singleton, Meigs’ Rep. 207, and Overton's heirs vs. Cannon, 2 Humphreys, 264, there were no adjacent owners, the land being vacant and unappropriated, and of course the question as to notice could not arise, and did not; the controversy being between an enterer subsequent to the re-survey, and the original grantees.
In the case of Whitesides vs. Singleton, the court said, “The question of what acquiescence will deprive a man of a portion of his estate by making good an erroneous re-survey of his land, made without authority, and originally void, is a very grave question, when it shall become necessary to determine it.’-’
In Overton’s case, it is said, “To hold that a man shall be estopped from claiming his just and legal rights by a hasty, ill advised, and momentary recognition of a line which had been illegally run, we think would be exceedingly dangerous and well calculated to unsettle rights to lands, by exposing them to the fraudulent conduct of the land monger, and the danger of having it supported by perjury, the necessary consequence of the reception.of parol proof, to establish the recognition.”
These principles apply with full force to the present case. We therefore affirm the judgment of the Circuit Court.